IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KOFFI JOSUE BESSAN, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-1753-M-BK |
| | § | |
| TACO-CABANA L.P., | § | |
|     Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order 3* and 28 U.S.C. § 636(b), *Defendant's Motion to Compel Arbitration and Dismiss Plaintiff's Claims or Stay Proceedings*, Doc. 14, is now before the Court for findings of fact and a recommended disposition. For the reasons stated herein, the motion should be **GRANTED**.

**I. BACKGROUND**

Plaintiff filed this action in July 2017, asserting various claims arising from the termination of his employment by Defendant Taco-Cabana L.P.[1] Plaintiff alleges he was employed by Defendant between May 2010 and September 2014, when he was wrongfully terminated after reporting a "discrimination issue" to the human resources manager. Doc. 3 at 2, 9. Plaintiff asserts claims against Defendant for race and national origin discrimination and retaliation, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Doc. 8 at 4. In September 2017, Defendant filed the instant motion, moving to dismiss Plaintiff's claims and compel arbitration or, alternatively, to stay the district court proceedings pending the outcome of arbitration. Doc. 14 at 1. Defendant contends that Plaintiff, upon hire in May 2010, received

---

[1] Defendant avers that its true name is "Texas Taco Cabana L.P." Doc. 14 at 1.

and signed an Agreement for Resolution of Disputes Pursuant to Binding Arbitration (the "Arbitration Agreement"). Doc. 15 at 1; Doc. 15-1 at 5.

## II. APPLICABLE LAW

The purpose of the Federal Arbitration Act ("FAA") is to promote federal public policy favoring arbitration and to ensure that arbitration agreements are enforced like any other contract. *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). The FAA provides, in part:

> A written provision in any [. . .] contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (2012). Accordingly, once a court finds an agreement to arbitrate between the parties, the court is restricted to enforcing the agreement. *See AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986). The FAA also dictates that any doubts concerning the scope of arbitration should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).

It is well settled that the "fundamental principle [of] arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (*quoting Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Accordingly, courts apply ordinary state contract principles when evaluating arbitration agreements. *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012). Arbitration agreements, like other contracts, are subject to contract defenses such as fraud, duress, or unconscionability. *Jackson*, 561 U.S. at 68. Under the FAA, a written arbitration agreement is prima facie valid and must be enforced unless the party opposing

arbitration alleges and proves that the arbitration clause was a product of fraud, coercion, or any other legal or equitable grounds sufficient to revoke the contract. *Freudensprung v. Offshore Tech. Servs. Inc.*, 379 F.3d 327, 341 (5th Cir. 2004) (citation omitted).

When considering a motion to compel arbitration, a court determines (1) the existence of a valid agreement among the parties to arbitrate the dispute, and (2) whether the dispute falls within the scope of the agreement. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-7 (1985); *Carey*, 669 F.3d at 205.

### III. ANALYSIS

#### A. The Arbitration Agreement

The Arbitration Agreement in the case *sub judice* provides that "any and all disputes, claims or controversies for monetary or equitable relief arising out of or relating to your employment, even disputes, claims, or controversies relating to events occurring outside the scope of your employment ("Claims"), shall be arbitrated . . . ." Doc. 15-1 at 5.  It also states that "[c]laims subject to arbitration shall include, without limitation, disputes, claims, or controversies relating or referring in any manner, directly or indirectly, to Title VII of the Civil Rights Act of 1964. . . ." Doc. 15-1 at 5.

#### 1. Validity of the Arbitration Agreement

Defendant contends the Arbitration Agreement is a valid and binding contract that mandates this dispute be resolved exclusively in arbitration. Doc. 15 at 3-4.  In response, Plaintiff argues, *inter alia*, the Arbitration Agreement is unenforceable because he was not informed of the Agreement, the Agreement was not explained to him, and the Agreement violates public policy. Doc. 17 at 1.  Plaintiff also argues that a provision in the Arbitration Agreement contractually allows him to pursue his claim in court. Doc. 17 at 2.

In the present case, a valid agreement to arbitrate the dispute exists between the parties. Plaintiff blindly argues the Arbitration Agreement is unenforceable because he was not informed of the Agreement and the Agreement was not explained to him. *See* Doc. 17 at 1 ("I was told to sign the mandatory employment paper-works [sic] by the Manager on duty Mr. Kingsley. I was shown the places to put my signature in [sic] on mandatory employment paper-works [sic]. Nobody explained anything to me so far.").

The last paragraph of the Arbitration Agreement titled "**EMPLOYEE ACKNOWLEDGEMENT**" unequivocally states:

> By signing below you acknowledge that you are agreeing to have Claims, as described above, finally decided in private arbitration and not in court. *You acknowledge that you have read and understand this arbitration agreement*; that you have had an opportunity to ask questions regarding the meaning of the agreement; and that if you had any questions they have been satisfactorily answered.

Doc. 15-1 at 6 (emphasis added). Failure to read a contract, absent fraud or imposition, is not a defense to enforcement of a contract. *See Estes v. Republic Nat. Bank of Dallas*, 462 S.W.2d 273, 276 (Tex. 1970) (citing *Indemnity Ins. Co. of North America v. W. L. Macatee & Sons*, 129 Tex. 166, 101 S.W.2d 553 (1937)). Thus, Plaintiff's arguments that the Arbitration Agreement is unenforceable because he was not informed of the agreement and the agreement was not explained to him are without merit.

Plaintiff also suggests the Arbitration Agreement is unenforceable because it violates public policy. Plaintiff avers, "I also believe that such agreement is inconsistent with the civil rights laws. Such agreement that mandates binding arbitration of discrimination claims as a condition of employment is contrary to the fundamental principles evinced in this Title VII." *See* Doc. 17 at 1. That argument has been soundly rejected, however. *See Alford v. Dean Witter*

*Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir. 1991) ("Title VII claims can be subjected to compulsory arbitration. Any broad public policy arguments against such a conclusion were necessarily rejected by *Gilmer*") (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 27 (1991) ("we do not perceive any inherent inconsistency between [important social policies furthered by the ADEA], however, and enforcing agreements to arbitrate age discrimination claims"). Moreover, as previously discussed herein, federal courts have recognized a strong public policy in favor of enforcing arbitration agreements. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985); *Texaco Exploration & Prod. Co. v. AmClyde Engineered Products Co.*, 243 F.3d 906, 909 (5th Cir. 2001).

**2. Scope of the Arbitration Agreement**

The claims Plaintiff brings in this lawsuit fall within the scope of the Arbitration Agreement. The Arbitration Agreement clearly states "[c]laims subject to arbitration shall include, without limitation, disputes, claims, or controversies relating or referring in any manner, directly or indirectly, to: title VII of the Civil Rights Act of 1964 . . . ." Doc. 15-1 at 5. While Plaintiff does not dispute that he signed this agreement, he does argue that his Title VII claims fall outside the scope of the agreement. Doc. 17 at 1-2. Plaintiff supports his argument by mistakenly relying on the term "irreparable harm" in the Arbitration Agreement: "You also understand that the parties reserve the right to go to court if they are faced with the risk of *irreparable harm*, such as the disclosure of confidential information. You understand that the arbitrator will finally decide the dispute after the presentation of evidence." Doc. 15-1 at 6 (emphasis added).

Defendant correctly notes that the term "irreparable harm" in the Arbitration Agreement basically refers to that requiring preliminary injunctive relief. Doc. 18 at 3-4. Indeed, the Texas

5

courts' interpretation of irreparable harm is like that relied upon by Defendant. *See, e.g., MAG-T, L.P. v. Travis Cent. Appraisal Dist.*, 161 S.W.3d 617, 632 (Tex. App. 2005) ("'Irreparable harm' means that an award of damages at a later date will not adequately compensate an aggrieved party.") (citing *Houston Fed'n of Teachers, Local 2415 v. Houston Indep. Sch. Dist.*, 730 S.W.2d 644, 646 (Tex. 1987)).

Even if the term "irreparable harm" was considered ambiguous, the court "must construe any such ambiguity in favor of arbitration." *See Pacheco v. PCM Const. Servs., L.L.C.*, No. 3:12-CV-4057-L, 2014 WL 145147, at *5 (N.D. Tex. Jan. 15, 2014), *aff'd* 602 F. App'x 945 (5th Cir. 2015) (citing *Klein v. Nabors Drilling USA, L.P.,* 710 F.3d 234, 237 (5th Cir. 2013)). Accordingly, based on the applicable law and a plain reading of the Arbitration Agreement, Defendant's motion to compel should be **GRANTED**.

### B. Dismissal of Plaintiff's Claims

When a dispute is subject to an arbitration agreement, the "proper course of action is usually to stay the proceedings pending arbitration." *Ruiz v. Donahoe*, 784 F.3d 247, 249 (5th Cir. 2015). However, dismissal may be appropriate "'when all of the issues raised in the district court must be submitted to arbitration.'" *Id.* at 249-50 (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)) (district court acted within its discretion to dismiss case with prejudice, where all claims were subject to arbitration).

In this case, all of Plaintiff's claims are subject to arbitration pursuant to the parties' arbitration agreement because they are brought under Title VII. *See* Doc. 15-1 at 5 ("[c]laims subject to arbitration shall include, without limitation, disputes, claims, or controversies relating or referring in any manner, directly or indirectly, to: Title VII of the Civil Rights Act of 1964 . . . ."). Accordingly, Defendant's motion to dismiss Plaintiff's claims should be **GRANTED**.

## IV. CONCLUSION

*Defendant's Motion to Compel Arbitration and Dismiss Plaintiff's Claims or Stay Proceedings*, Doc. 14, should be **GRANTED** to the extent set forth above, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on March 12, 2018.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE